IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANA L. TARQUINI,
     Plaintiff,
v.

DAVID J. GORBERG, ESQUIRE,
and DAVID J. GORBERG, P.C.,
     Defendants.

CIVIL NO. 09-492

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.**                                              **September 9, 2010**

        Plaintiff Dana Tarquini's ("Plaintiff" or "Tarquini") brought the instant action on February 4, 2009, alleging that she was defamed by Defendant David J. Gorberg, Esquire ("Gorberg"). Now before the Court is Defendant Gorberg and his law firm, David J. Gorberg, P.C.'s (together, "Defendants") Motion for Summary Judgment,[1] asking the Court to dismiss Plaintiff's one-count Complaint as a matter of law. Also before the Court is Plaintiff's Cross-Motion for Partial Summary Judgment.[2] These Motions have been fully briefed and are now ripe for disposition.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

        Defendant Gorberg is the sole shareholder and chief executive officer of Defendant Gorberg P.C., a law firm with offices in Pennsylvania and New Jersey.[3] On the date of the alleged

---

[1] Defs.' Mot. for Summ. J. (Doc. No. 16). The Court's jurisdiction is predicated on diversity of citizenship and an amount in controversy greater than $75,000. Compl. ¶ 2.

[2] Pl.'s Cross-Mot. for Partial Summ. J. (Doc. No. 17) ("Pl.'s Cross-Mot.").

[3] Answer ¶ 6 (Doc. No. 7).

incident, February 12, 2008, Plaintiff had been employed by Defendants as an attorney in the "lemon law" field for approximately five years.[4] On that day, Defendant Gorberg learned that Plaintiff had issued a check to herself in the amount of $1,668.46 from the firm's New Jersey business account.[5] Plaintiff asserts that she had the authority to reimburse herself for legitimate business expenses and that the check represented "Reimbursement CLE, new attorney luncheon, Verizon cell p[hone]";[6] Defendants contend that the check was unauthorized. Nevertheless, when Defendant Gorberg discovered the charge, he became upset and went to Plaintiff's office to discuss the matter with her.[7]

The parties dispute the substance of the conversation, but it is uncontroverted that Plaintiff's employment was terminated by Defendant Gorberg during the meeting. Plaintiff alleges that Defendant came to her office "screaming that I was a thief"[8] and that:

> I had to get out, I was fired, not to touch anything. . . . He was screaming and yelling all the way down the hallway, that I was a thief, I was fired, right out to the reception area and the front door. He had his hand on his hip, his finger pointed out. And he said: Get out, get out, I'm calling the police, you are a thief.[9]

Samuel LeHew, an attorney at Gorberg P.C., reportedly overheard a portion of the conversation, as

---

[4] Id. ¶ 7. Plaintiff had previously been employed by the law firm of Kimmel and Silverman for two years, immediately after her graduation from the Temple School of Law in 2001.

[5] Pl.'s Cross-Mot. (Ex. G).

[6] Id.; Tarquini Dep. 87, 100-102 (Pl.'s Cross-Mot. Ex. A).

[7] Gorberg Dep. 34-35 (Defs.' Reply Ex. A (Doc. No. 20)). Plaintiff alleges that, in the months preceding February of 2008, she had been discussing with Gorberg the opportunity to become a shareholder or partner at Gorberg P.C. Compl. ¶ 12 (Doc. No. 1); Tarquini Dep. 129-34. Plaintiff further alleges that on February 11, 2008, one day before her termination, Defendant Gorberg had approached her about a possible demotion and the discontinuation of her management and check-writing privileges. She told him she would consider it. Tarquini Dep. 137.

[8] Tarquini Dep. 156.

[9] Id. at 156-59.

2

follows: "I heard Dave [Gorberg] tell Dana [Tarquini] to get out. She asked why. He said, you f***ing stole from me. And then she pleaded with him. And then I heard her say something about taking her things with her."[10] Defendants admit to only one other subsequent publication concerning Plaintiff's termination, a statement from Gorberg to paralegal Maria Kahlan that "Plaintiff was terminated because she had written herself a check."[11] Kahlan testified that Gorberg volunteered the information to her despite the fact that she did not have any human resources or attorney oversight responsibilities in the firm, nor did she have any duty to fill out employment forms concerning Plaintiff's termination.[12]

Plaintiff asserts that the news and circumstances of her termination spread quickly at the firm, and then throughout the legal community. Jacquelynn Murray, a paralegal at Gorberg P.C., only heard Gorberg say the word "leave" to Plaintiff, but soonafter heard co-workers discussing that Plaintiff "supposedly stole from Gorberg - wrote a check out."[13] On the evening of February 12, 2008, Tracy Jones, a former secretary/receptionist for Gorberg P.C., received four phone calls from former co-workers at Gorberg P.C., who each communicated that "Mr. Gorberg had fired Ms. Tarquini that day, and that he had been running up and down the hallway of the office accusing her of stealing from him."[14] On February 13th, Plaintiff alleges that she was contacted by Ann Burris,

---

[10] LeHew Dep. 8 (Pl.'s Cross-Mot. Ex. B). Plaintiff believes that the door to her office was open during her altercation with Gorberg, but LeHew stated in his deposition that when he walked by Plaintiff's office, her door was closed, and that he only heard the statements made as Gorberg began opening the door. Id.

[11] Kahlan Dep. 9 (Pl.'s Cross-Mot. Ex. E).

[12] Id. at 11-12.

[13] Murray Dep. 7 (Pl.'s Cross-Mot. Ex. D).

[14] Statement of Tracy Jones ¶ 4 (Pl.'s Cross-Mot. Ex. C).

3

another lemon law attorney from the area.[15] Burris had learned from Kim Hoehing, an attorney previously employed by Gorberg P.C., that Tarquini had been fired for some kind of financial dishonesty.[16] Burris believes that Hoehing learned that information from someone at Gorberg P.C.[17] Plaintiff also received an email from Dominique Grenier, another attorney who had previously worked for Gorberg P.C., with a single line of text: ". . . kim & I aren't buying the official story . . . ."[18] According to Plaintiff, the "Kim" referred to in the email is Kim Hoehing.[19] Finally, Tarquini received a telephone message from Melissa Hanna, another former Gorberg P.C. attorney, asking: "What happened? It must have been horrible."[20] When Plaintiff and Hanna spoke a few weeks later, Hanna told Tarquini that she had heard that Gorberg had called Tarquini a thief.[21]

Plaintiff avers that her reputation in the narrow field of lemon law was adversely affected by Gorberg's alleged defamatory publication, and that she faced humiliation and embarrassment as a result. She further avers that within the small pool of lawyers in the Pennsylvania and New Jersey legal community, her credibility and confidence were undermined. She was, "confused, humiliated, and felt dirty" and "afraid . . . to leave [her] house."[22] Plaintiff also

---

[15] Tarquini Dep. 170-71. Although Burris stated in her deposition that she could not recall whether the words "stealing" or "theft" were communicated to her regarding Plaintiff's termination, Tarquini testified that Burris told her that she heard Plaintiff had been called a thief. Id.; Burris Dep. 29-30 (Pl.'s Cross-Mot. Ex. F).

[16] Burris Dep. 48.

[17] Id. at 48-49.

[18] Pl.'s Cross-Mot. Ex. H.

[19] Tarquini Dep. 172-73.

[20] Id. at 176-79.

[21] Id. at 179-80.

[22] Pl.'s Cross-Mot. at 9.

4

feared that criminal charges might be filed based on Gorberg's accusation.[23] Plaintiff asserts that she applied to numerous new positions in various fields of law, but was unable to get a job despite her previously held view that she was a "well-known, well-respected, and well-qualified" attorney.[24] She received one interview, in which the interviewing attorney "asked many, many times about why [she] was let go by David Gorberg."[25] When Plaintiff said that she did not want to talk about it, the attorney said that he would need to "do some research."[26] Plaintiff did not hear the result of that research, if it was done, and she did not get the job.[27] While unemployed, Plaintiff participated in training courses in foreclosure, probate, and divorce work;[28] she stated that she avoided applying for lemon law or automobile warranty work because she felt that she was "ruined in the field."[29] Plaintiff began her own law firm in late 2008, but when it failed to generate adequate income, she decided in 2009 that she would pursue a career in another field.[30]

LeHew cited an incident in which Kevin McKeon, an attorney from Marshall Dennehey, inquired into the circumstances of Tarquini's termination.[31] LeHew described their conversation as follows: "And he brought up Dana [Tarquini], and he said something about

---

[23] Id. at 9-10.

[24] Id.; Tarquini Dep. 234-35.

[25] Tarquini Dep. 242-43.

[26] Id. at 243.

[27] Id.

[28] Id. at 247.

[29] Id. at 251.

[30] Id. at 272, 288-89.

[31] LeHew Dep. 11.

5

[Tarquini] being fired. And I said that I didn't know why she was fired. And then he made a comment that he had heard it was because she had been stealing."[32] LeHew stated that the reason McKeon mentioned Tarquini was that she had recently contacted him looking for work.[33]

Plaintiff filed the underlying Complaint on February 4, 2009, containing one count of "Defamation - Slander *Per Se*." Defendants filed the instant Motion for Summary Judgment on November 30, 2009, arguing essentially three points: one, that the statements allegedly made by Gorberg did not amount to defamation *per se*; two, Plaintiff cannot show the general damages required to state a defamation claim; and three, Gorberg's publication was privileged. Plaintiff responded with a Cross-Motion for Summary Judgment, seeking an order from the Court that Gorberg's statements, if found to have been made, constitute defamation *per se*.

## II. STANDARD FOR SUMMARY JUDGMENT

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. A moving party may be granted summary judgment with respect to any claim if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[34] A court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in making its determination.[35] An issue is "genuine" if a reasonable trier of fact could find for the nonmoving

---

[32] Id.

[33] Id. at 12.

[34] FED. R. CIV. P. 56(c) (2010 Revised).

[35] Id.

6

party in light of the evidence,[36] and a court must consider the evidence in a light most favorable to the nonmoving party.[37]

The burden is initially on the moving party to show an absence of evidence to support a claim raised by the nonmoving party.[38] Upon a showing by the moving party that the claims of the nonmoving party cannot be supported by the available evidence, the burden shifts to the nonmoving party to rebut the motion with the elements essential to maintain its case,[39] through the use of its "own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."[40] There must be enough evidence for a reasonable juror to decide for the nonmoving party; a mere scintilla of evidence is not enough.[41] If the nonmoving party fails to meet its burden, summary judgment is appropriate.

## III. DISCUSSION

*A. Defamation Per Se*

In their respective motions, each party asks the Court to determine whether the statements that Plaintiff claims were made by Defendant Gorberg on February 12, 2008 were defamatory *per se.* Under Pennsylvania law, whether an allegedly defamatory statement is

---

[36] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

[37] See Pollock v. American Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

[38] Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).

[39] Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).

[40] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).

[41] Anderson, 477 U.S. at 252.

defamatory *per se* is a question for the court.⁴² For each of the summary judgment motions, the Court accepts the version of the facts submitted by the party opposing the motion as true.⁴³ A statement is slander *per se* if the words impute (1) criminal offense, (2) loathsome disease, (3) a "matter incompatible with his business, trade, profession, or office," (often summarized as "business misconduct") or (4) serious sexual misconduct.⁴⁴ Defendants dispute Plaintiff's assertion that Gorberg's alleged statement, "You f***ing stole from me," imputes both business misconduct and criminal misconduct, in addition to Plaintiff's argument that the events of February 12, 2008 resulted in "defamation by conduct."

Defendants claim that "[Tarquini's] check writing task was purely administrative and not related to the practice of law in any way,"⁴⁵ and therefore the alleged statement cannot impute business misconduct. The Court disagrees. "A statement is defamatory *per se* as an accusation of business misconduct if it 'ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business.'"⁴⁶ An accusation of stealing strikes at the heart of an attorney's credibility, honesty, and integrity, qualities essential to an adherence to the Rules of Professional Conduct⁴⁷ and critical to the maintenance of a successful

---

⁴²Synygy, Inc. v. Scott-Levin, Inc., 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999) (citing Fox v. Kahn, 421 Pa. 563, 568-69 (Pa. 1966)).

⁴³Supra, note 37.

⁴⁴Restatement (Second) of Torts § 570 (1977).

⁴⁵Defs.' Reply at 6.

⁴⁶Clemente v. Espinosa, 749 F. Supp. 672, 677-78 (E.D. Pa. 1990) (quoting Restatement (Second) of Torts § 573).

⁴⁷See Pa. RPC 8.4 (2010) (stating that "[i]t is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation").

8

legal career. While handling firm bank accounts is not always included in an attorney's duties, an apparent inability to handle those funds responsibly reflects on an attorney's character in other areas. Defendants claim that the alleged defamatory statement concerns only "purely administrative" matters, however the Court finds that Defendant's words, if said, clearly imputed business misconduct on the part of Plaintiff.[48]

Plaintiff further argues that Gorberg's statement contained allegations of a criminal offense punishable by imprisonment. Under Pennsylvania law, theft or stealing is a crime.[49] Although no criminal charges were actually brought, accusations of stealing funds (combined with the demand overheard by LeHew that Tarquini "get out") could logically lead to criminal charges. Courts in Pennsylvania have generally held that accusations of theft are actionable as slander *per se*.[50] Thus, the Court finds that Defendant's alleged statements amount to slander per se under a criminal offense theory. Finally, Plaintiff appears to assert that the actions Gorberg took to remove her from the office on February 12th amounted to "defamation by conduct." Given that the alleged statement, if proven, is sufficient to constitute defamation *per se* on either a business misconduct or criminal misconduct theory, there is no need to consider what was communicated through Defendant Gorberg's additional conduct.

Thus, the Court finds that the statement allegedly made by Defendant Gorberg, "You

---

[48] See, e.g., Smith v. IMG Worldwide, Inc., 437 F. Supp. 2d 297 (E.D. Pa. 2006) (holding that a comment that a sports agent played the "race card" in contract negotiations was sufficiently harmful to the agent's business relationship to constitute slander *per se*); Clemente, 749 F. Supp. 672 (finding that statements that an attorney was "connected with the Mafia" were linked to the attorney's honesty and integrity, and thus was slander *per se* on a business misconduct theory).

[49] 18 Pa.C.S. §§ 3921, 3922, 3923 (2010).

[50] See Fanelle v. LoJack Corp., 79 F. Supp. 2d 558, 562 (E.D. Pa. 2000); Burns v. Supermarkets General Corp., 615 F. Supp. 154, 157 (E.D. Pa. 1985).

f***ing stole from me," qualifies as slander *per se*, and Plaintiff's Cross-Motion for Partial Summary Judgment shall be granted.

*B. General damages*

Once a court has determined that an alleged statement is defamatory *per se*, the damages analysis changes. A defamation *per se* plaintiff does not need to prove special damages, defined as monetary or out-of-pocket loss.[51] Instead, a plaintiff need only prove general damages, defined as "proof that one's reputation was actually affected by the slander, or that [one] suffered personal humiliation, or both."[52] Defendants assert that Plaintiff has not provided any evidence of emotional distress, nor shown reputational harm in the eyes of any third party, and therefore has not sufficiently demonstrated general damages. Plaintiff counters that she has submitted testimony relevant to her personal confusion and humiliation and substantial evidence as to the resulting effects of the termination on her reputation in legal community.

The Court finds that Plaintiff has in fact provided sufficient, competent evidence of general damages. She testified at her deposition that she experienced personal humiliation, described that she was confused and embarrassed, and explained that she feared criminal charges would ensue. Moreover, Plaintiff provided several accounts from third parties, including Burris, Murray, and LeHew, that indicate the potentially widespread reputational effects of the circumstances of Plaintiff's termination. Even though several witnesses have stated that they did not believe the truth of the allegations (that Plaintiff actually stole from Defendants), a jury could infer that the strength of the third parties' reactions in defense of Plaintiff demonstrate the potential harm that they know

---

[51] Walker v. Grand Cent. Sanitation, 430 Pa. Super. 236, 241 (Pa. Super. Ct. 1993).

[52] Id. at 242.

could result from such an accusation.⁵³ Analyzing Pennsylvania law, the Third Circuit in <u>Marcone v. Penthouse International Magazine</u>⁵⁴ found that the plaintiff's evidence of harm was legally sufficient as to reputation and mental anguish based on his testimony that he was "frustrated, distraught, upset, and distressed about the [defamatory publication] and its effect on his family and friends, in that it revived the charges which he thought had been laid to rest two years previously."⁵⁵ Plaintiff has provided significantly more support for her damages claims here than did the plaintiff in <u>Marcone</u>.

Defendants further allege that Plaintiff must show that Gorberg's alleged published statement was the cause of the harm she suffered. As LeHew and Kahlan both deny spreading the news of Gorberg's alleged statements to others, Defendants claim that Plaintiff cannot prove that the alleged widespread harm to Plaintiff's reputation in the legal community originated with Gorberg. The record evidence in this matter, however, supports Plaintiff's claim that the source of the accusation that Plaintiff stole from Defendants was none other than Defendant Gorberg; the Court does not perceive a reasonable alternative source.⁵⁶ Gorberg admitted to yelling at Plaintiff in her

---

⁵³<u>See</u> <u>Sprague v. American Bar Association</u>, 276 F. Supp. 2d 365, 370 (E.D. Pa. 2003):

> "Plaintiff's witnesses testified that their positive opinions of him were not negatively affected simply because they knew him personally and thus did not believe the defamatory accusation; instead, they were outraged. A rationale inference from this evidence would be that those who read the article without personal knowledge of plaintiff would have no reason to disbelieve the alleged defamation, which would possibly result in plaintiff's reputational loss."

⁵⁴754 F.2d 1072 (3d Cir. 1985).

⁵⁵<u>Id.</u> at 1080 (internal citations omitted).

⁵⁶Even if there was an alternative theory of how the accusation was disseminated, Plaintiff does not have to show to an absolute certainty that Gorberg was the only possible source. <u>See</u> <u>Agriss v. Roadway Express, Inc.</u>, 334 Pa. Super. 295, 483 A.2d 456 (1984) (finding that when "only a handful of possible sources could have originated

office on the day in question, and Defendants concede that he separately published the information to Kahlan.[57] During the rest of the day, the accusation spread throughout the workplace. The speed with which the information spread provides support for the argument that Gorberg P.C. employees themselves disseminated the alleged defamatory statements, and that the harm began when Gorberg published the accusation. Testimony from Jones and Burris bolsters this theory as well, as they claimed to have received their information regarding Plaintiff's termination from employees at Gorberg P.C. Thus, the Court concludes that Plaintiff has produced sufficient evidence from which a rational jury could infer that Gorberg's statements caused reputational harm and mental anguish, and she has met her burden with respect to general damages.

*C. Privilege*

Finally, Defendants assert that Gorberg "maintains an absolute privilege when publishing statements to those with legitimate interests in the subject matter when they are made in connection with an employment termination."[58] In the alternative, Defendants assert a conditional privilege, as to both Kahlan and LeHew. Pennsylvania courts recognize an absolute privilege for employers publishing defamatory matters in notices of dismissal or warning letters. A conditional privilege applies "when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know."[59] In both cases, however, the

---

the . . . publication," evidence of publication was sufficient).

[57] Gorberg Dep. 41-42.

[58] Defs.' Mem. of Law ¶ 24 (Doc. No. 16).

[59] Burns v. Supermarkets General, 615 F. Supp. 154, 158 (E.D. Pa. 1985) (quoting Beckman v. Dunn, 276 Pa. Super, 527, 536, 419 A.2d 583 (1980) (citations omitted)).

privilege can be lost through excessive publication.[60]

There is no dismissal or warning letter at issue here. Defendants assert that both LeHew and Kahlan shared a common interest in the subject matter of Plaintiff's termination, such that Gorberg's statements to them were appropriate and privileged; however, Defendants present no evidence or testimony in support of that contention. Kahlan testified that in fact she did not have any responsibilities with respect to human resources or attorney oversight at Gorberg P.C. Neither LeHew or Kahlan was in a supervisory role with respect to Plaintiff.[61] Also, it is possible that a jury could find instances of publication other than the statements heard by LeHew and Kahlan. Thus, it is inappropriate to grant summary judgment in favor of Defendants on the issue of privilege.[62]

## IV. CONCLUSION

For the reasons stated above, the Court will deny Defendants' Motion for Summary Judgment in full and grant Plaintiff's Motion for Partial Summary Judgment. An appropriate Order follows.

---

[60] Id.

[61] See, e.g., Quinn v. Limited Exp., Inc., 715 F. Supp. 127 (W.D. Pa. 1989) (denying summary judgment for defendant employer when there was evidence of publication of defamatory statements to non-supervisory employees).

[62] As the Court denies Defendants' Motion for Summary Judgment in full on the merits, there is no need to address Plaintiff's contention that Defendants employed an improper format in their initial motion filing.